# Illinois Official Reports

## Supreme Court

***Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043**

| | |
|---|---|
| Caption in Supreme Court: | THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellee, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al*., Appellants. |
| Docket No. | 118043, 118072 cons. |
| Filed | December 17, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on a petition for review of an order of the Illinois Educational Labor Relations Board. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Kurtis R. Hale, of Poltrock & Poltrock, Robert Bloch, of Dowd, Bloch, Bennett and Cervone, and Graham Hill and Thaddeus Goodchild, all of Chicago, for appellant Chicago Teachers Union. |
| | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Sharon A. Purcell, Assistant Attorney General, of Chicago, of counsel), for appellants Illinois Educational Labor Relations Board *et al*. |
| | James L. Bebley and Lee Ann Lowder, of Chicago, for appellee. |

Justices          JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

**OPINION**

¶ 1      The Chicago Teachers Union, Local 1, IFT-AFT, AFL-CIO (Union), filed an unfair labor practice charge with the Illinois Educational Labor Relations Board (IELRB) against the Board of Education of the City of Chicago (Board). The Union alleged that the Board violated section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1) (West 2010)) by refusing to arbitrate grievances. The IELRB found that the Board had violated the Act. On direct administrative review, a divided panel of the appellate court reversed the IELRB's decision. 2014 IL App (1st) 130285.

¶ 2      This court allowed the Union's and the IELRB's separate petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)) and consolidated the causes for review. We now affirm the judgment of the appellate court and remand to the IELRB for further proceedings.

¶ 3                          I. BACKGROUND

¶ 4      The appellate court adequately recited the stipulated facts. We need not repeat those details here. As defined in the Act, the Board is an educational employer (115 ILCS 5/2(a) (West 2010)), and the Union is an employee organization (115 ILCS 5/2(c) (West 2010)) that is an exclusive representative (115 ILCS 5/2(d) (West 2010)) of a bargaining unit of the Board's employees that includes teachers. The Board and the Union were parties to a collective bargaining agreement (CBA) in effect from 2007 to 2012. The CBA established a grievance procedure that culminated in final and binding arbitration.

¶ 5      In June 2010, the Board notified the Union of a new policy. The Board was going to designate as ineligible for rehire nonrenewed probationary appointed teachers (PATs) who have been nonrenewed twice or who have been given an unsatisfactory performance rating. At the end of the 2009-10 school year, the Board began implementing this policy by placing in the personnel files of such PATs a "Do Not Hire" (DNH) designation.

¶ 6      The Union timely presented to the Board four grievances and demanded arbitration. Three of the grievances were on behalf of individual PATs and one was on behalf of all PATs. The Board had notified all of the individual PATs that they were being nonrenewed with the Chicago Public Schools for the following school year but did not inform them that it had placed a DNH designation in their personnel files. The grievances alleged that the Board's DNH policy violated various sections of the CBA.

¶ 7      In the individual grievances, the Union requested the Board, respectively, to restore two grievants to their teaching positions at particular schools and to allow the third grievant to seek a Chicago Public Schools position for which she qualifies. In the collective grievance, the Union requested that the Board: cease the practice of placing DNH designations in union

members' files if the terminations were not for cause; remove union members from the DNH list; notify all union members in writing who have received a DNH designation; give the Union a list of all Union members on the DNH list; allow all Union members to seek employment within the Chicago Public Schools; and "[d]iscuss any and all changes that affect the working conditions and employment status" of union members with the Union.

¶ 8     The Board notified the Union that it refused to arbitrate the grievances, which the Board viewed as an attempt by the Union to require the Board to hire persons whom the Board did not believe it should hire. The Board claimed that the subject matter of the grievances was excluded from arbitration because Board hiring decisions were exclusive management rights.

¶ 9     The Union filed an unfair labor practice charge with the IELRB against the Board. The Union alleged that the Board violated section 14(a)(1) of the Act by refusing to arbitrate the grievances. The executive director of the IELRB investigated the Union's charge and issued a complaint. See 115 ILCS 5/15 (West 2010). In lieu of a hearing before an administrative law judge (ALJ), the parties filed a stipulated record. An ALJ ordered that the case be removed to the IELRB based on her certification that there were no determinative issues of fact requiring an ALJ's recommended decision. In a written opinion and order, the IELRB found that, pursuant to the Act and the CBA, the Board had a duty, upon the Union's request, to arbitrate the DNH grievances and, by refusing to do so, the Board violated section 14(a)(1) of the Act. The IELRB ordered the Board to arbitrate the grievances and to grant other relief requested by the Union.

¶ 10    On direct administrative review, a divided panel of the appellate court reversed the IELRB's decision. 2014 IL App (1st) 130285. Reviewing the IELRB's decision *de novo*, the appellate court concluded that the Board was contractually and statutorily not obligated to arbitrate the grievances and, therefore, held that the IELRB erred in finding that the Board violated section 14(a)(1) of the Act. *Id.* ¶ 44. The dissenting justice would have confirmed the IELRB's decision, concluding that the grievances were arbitrable. *Id.* ¶ 69 (Gordon, P.J., dissenting). The Union and the IELRB each appeals to this court.

¶ 11                                II. ANALYSIS

¶ 12    Before this court, the Union and the IELRB contend that the Board is obligated under the CBA to arbitrate the grievances. The Board contends that it has a managerial right over hiring decisions that is contractually and statutorily excluded from arbitration.

¶ 13                            A. Standard of Review

¶ 14    At the outset, the parties disagree on the appropriate standard of review. On administrative review, our role is to review the decision of the administrative agency, here the IELRB, and not the determination of the appellate court. See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). The Act provides that a final order of the Board is subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)), taken directly to the appellate court. 115 ILCS 5/16(a) (West 2010). Under the Administrative Review Law, the scope of judicial review extends to all questions of law and fact presented by the record before the court. 735 ILCS 5/3-110 (West 2010). The applicable standard of review, which determines the degree of deference given to the agency's decision, depends on whether the issue presented is a question of law, fact, or a mixed question of law

and fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001).

¶ 15    An agency's conclusion on a question of law is reviewed *de novo*. A reviewing court is not bound by an agency's interpretation of a statute. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008). However, the agency's interpretation remains relevant where there is a reasonable debate about the meaning of the statute. *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 212 Ill. 2d 237, 247 (2004). In contrast, "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2010). Accordingly, when a court reviews an agency's factual findings, the court will not reweigh the evidence or substitute its judgment for that of the agency. Rather, the court simply determines whether the findings of fact are against the manifest weight of the evidence. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005).

¶ 16    A mixed question of law and fact asks the legal effect of a given set of facts. In resolving a mixed question of law and fact, a reviewing court must determine whether established facts satisfy applicable legal rules. An agency's conclusion on a mixed question of law and fact is reviewed for clear error. A decision is "clearly erroneous" when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *AFM Messenger*, 198 Ill. 2d at 391-95.

¶ 17    Before this court, the Union and the Board agree that the appropriate standard of review is *de novo* because there are no determinative issues of fact and the IELRB only considered legal issues. For this reason, the appellate court reviewed the IELRB's decision *de novo*. 2014 IL App (1st) 130285, ¶ 19. However, the IELRB contends that the clearly erroneous standard of review is appropriate because this case presents mixed questions of law and fact.

¶ 18    We agree with the IELRB that the clearly erroneous standard of review is appropriate. The written order of the ALJ found that there were no questions of fact, and the IELRB decided the Union's complaint solely on the legal issues presented. However, mixed questions of fact and law are " 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *American Federation of State, County & Municipal Employees*, 216 Ill. 2d at 577 (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). Review for clear error is significantly deferential to an agency's experience in construing and applying the statute that it administers. *AFM Messenger*, 198 Ill. 2d at 393-95. This court has recognized that "[d]etermination of whether specific issues are mandatorily bargainable or not is best left to the IELRB, which has the knowledge and experience to balance the equities in a given case. However, our legislature has placed guidelines in the Act as to what should, and should not be bargained." *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 522 (1992). The main issue on review from the IELRB involves the application of the correct statutory interpretation of the Act to the facts. Accordingly, we apply the clearly erroneous standard of review. See *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998); *Chicago Teachers Union v. Illinois Educational Labor Relations*

*Board*, 334 Ill. App. 3d 936, 942 (2002).

¶ 19                                    B. Arbitrability of Grievances

¶ 20        Under section 14(a)(1) of the Act, "Educational employers, their agents or representatives are prohibited from \*\*\* [i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2010). A school district's refusal to submit an employee grievance to binding arbitration under a collective bargaining agreement is a violation of section 14(a)(1) of the Act. *Cobden Unit School District No. 17 v. Illinois Educational Labor Relations Board*, 2012 IL App (1st) 101716, ¶ 19; *Granite City Community Unit School District No. 9 v. Illinois Educational Labor Relations Board*, 279 Ill. App. 3d 439, 442 (1996); *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board*, 173 Ill. App. 3d 395, 409 (1988). However, refusal to arbitrate is an appropriate method to challenge the issue of arbitrability. See *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 225-26 (1988); *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 24 (2007). A school district may refuse to arbitrate a grievance where: (1) there is no contractual agreement to arbitrate the substance of the dispute or (2) the dispute is not arbitrable under section 10(b) of the Act (115 ILCS 5/10(b) (West 2010)) because the subject matter of the dispute conflicts with Illinois law. *Cobden Unit School District*, 2012 IL App (1st) 101716, ¶ 19; *Niles Township*, 379 Ill. App. 3d at 24.

¶ 21        The Board's position throughout these proceedings is that the decision to designate PATs as ineligible for rehire is a matter of inherent managerial policy for the selection of new employees. The Board contends that it did not contractually limit this authority and, further, that this authority is statutorily excluded from arbitration.

¶ 22        We first consider whether there was a contractual agreement to arbitrate the instant grievances concerning the DNH designations. In determining whether a school district is required to arbitrate a grievance, the mere existence of the dispute between the employer and the employee does not make the disputed matter subject to arbitration under a collective bargaining agreement. Rather, the IELRB must examine whether the grievance falls within the terms of the collective bargaining agreement. *Cobden Unit School District*, 2012 IL App (1st) 101716, ¶ 19.

¶ 23        In the case at bar, article 3 of the CBA provides the following definition: "A grievance is a complaint involving a work situation; a complaint that there has been a deviation from, misinterpretation of or misapplication of a practice or policy; or a complaint that there has been a violation, misinterpretation or misapplication of any provisions of this Agreement." As part of the grievance procedure, article 3-5 provides for binding arbitration. Further, article 34-4, concerning personnel files, provides as follows:

> "No derogatory statement about a teacher or other bargaining unit member originating outside of the Chicago public school system shall be placed in the teacher's or other bargaining unit member's personnel file, provided, further, that any official report or statement originating within the Chicago public school system may be placed in the teacher's or other bargaining unit member's personnel file only if the [person] is sent a dated copy thereof at the same time. The [person] may respond and such response shall be attached to the filed copy."

Further, article 48-2 of the CBA provides in pertinent part:

> "The BOARD shall not be required to bargain over matters of inherent managerial policy within the meaning of the [Act] or Illinois School Code, which shall include such areas of discretion or policy as the functions of the BOARD, standards of service, its overall budget, the organizational structure and selection of new employees and direction of employees ***. The BOARD, however, shall be required to bargain collectively with the UNION with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by the UNION."

¶ 24    The IELRB found that "there is no express language excluding this matter from arbitration." The IELRB determined that the DNH grievances were not contractually precluded from arbitration "[i]n light of the broad language in the grievance clause and the lack of exclusions from arbitration." The agency viewed the management rights language in article 48-2 as pertaining to the Board's "bargaining power, not arbitration."

¶ 25    The IELRB misconstrued the CBA. Pursuant to the Act, binding arbitration is a mandatory component in *all* collective bargaining agreements. 115 ILCS 5/10(c) (West 2010); see *Compton*, 123 Ill. 2d at 222-23. This court has repeatedly observed that employers have the right to refuse to bargain over "matters of inherent managerial policy." However, employers must bargain over "wages, hours and other terms and conditions of employment." 115 ILCS 5/4, 10(a) (West 2010); *Central City*, 149 Ill. 2d at 522; *Compton*, 123 Ill. 2d at 220.

¶ 26    In *Central City*, this court established a three-part test to determine whether a matter is subject to mandatory bargaining. First is the matter one of "wages, hours and terms and conditions of employment?" "If the answer to this question is no, the inquiry ends and the employer is under no duty to bargain." *Central City*, 149 Ill. 2d at 523. A term and condition of employment is something that an employer provides which intimately and directly affects the work and welfare of the employees. In addition to wages and hours, typical terms and conditions include health insurance and pension contributions. *Vienna School District No. 55 v. Illinois Educational Labor Relations Board*, 162 Ill. App. 3d 503, 507 (1987).

¶ 27    In the at case bar, we agree with the appellate court that the DNH grievances do not relate to terms and conditions of employment, but rather to the Board's ability to *initiate* employment, which is a matter of managerial policy. 2014 IL App (1st) 130285, ¶ 28. Although the CBA broadly defines a grievance, that broad definition does not, and as will be shown, cannot, pertain to the matters excluded from the bargaining process under the CBA, including the Board's ability to make hiring decisions.

¶ 28    Even if some provision in the CBA could be read to require that the DNH grievances be arbitrated, section 10(b) of the Act (115 ILCS 5/10(b) (West 2010)) would prohibit its enforcement because implementing the provision would violate or conflict with Illinois law. That section provides:

> "(b) The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." 115 ILCS 5/10(b) (West 2010).

In turn, section 4 of the Act provides in pertinent part:

- 6 -

"Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of service, its overall budget, the organizational structure and selection of new employees and direction of employees." 115 ILCS 5/4 (West 2010).

The instant DNH grievances are inarbitrable because their arbitration would conflict with section 4 of the Act.

¶ 29 The arbitration of these grievances would also conflict with several sections of the School Code. "[A] school board has only those powers expressly conferred upon it by the General Assembly and those that are necessary to carry into effect the powers granted by the legislature." *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 403 (1987) (citing *Wesclin Education Ass'n v. Board of Education of Wesclin Community Unit School District*, 30 Ill. App. 3d 67, 75 (1975)). Section 34-84 mandates that the Board shall appoint teachers "for merit only, and after satisfactory service for a probationary period of 3 years." 105 ILCS 5/34-84 (West 2010). Also, section 10-22.4 of the School Code, which authorizes a school district to dismiss a teacher "whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24-10 to 24-15, inclusive." 105 ILCS 5/10-22.4 (West 2010). This provision includes the power to terminate the employment of probationary teachers by the nonrenewal of their teachers' contracts. This discretionary power may not be delegated to an arbitrator or limited by a collective bargaining agreement. See *Illinois Education Ass'n Local Community High School District 218 v. Board of Education of School District 218, Cook County*, 62 Ill. 2d 127, 130-31 (1975); *Wesclin*, 30 Ill. App. 3d at 75-76. Thus, probationary teachers have no specific right to be retained by a school board. Rather, a school board may, subject to the provisions of the School Code, retain or dismiss probationary teachers entirely in its discretion. "In this situation, the probationary teacher is not discharged or dismissed so much as she is not asked to enter into continued contractual service." *Lockport Area Special Education Cooperative v. Lockport Area Special Education Cooperative Ass'n*, 33 Ill. App. 3d 789, 794 (1975). The school board may not delegate this power by agreeing to dismiss teachers only for just cause or agreeing to submit to binding arbitration whether or not there is just cause. "The Board may only agree to follow certain procedures before making a determination, which only the Board can make." *Id.*; accord *Cobden Unit School District*, 2012 IL App (1st) 101716, ¶ 21.[1]

¶ 30 The instant DNH grievances attempt to force the Board to hire probationary teachers. As the appellate court observed, the relief that the Union sought from the Board included reinstating grievants to their particular jobs, or allowing grievants to seek employment within the Chicago Public School system. 2014 IL App (1st) 130285, ¶ 28. The grievances therefore conflict with the Board's statutory authority to refuse to rehire probationary teachers, and the Board was not required to arbitrate them pursuant to section 10(b) of the Act. See *id.* ¶¶ 34-36.

¶ 31 PATs are employed for a single school-year term, and the Board alone is vested with the selection of such employees as a matter of inherent managerial policy. Further, the Board's policy of placing a DNH designation in the files of PATs following two nonrenewals or an

---

[1]The Union contends that the Board's failure to refer to the School Code before the IELRB precludes reference to it on administrative review. We disagree. Article 48-2 of the CBA and section 4 of the Act provide for the same management rights as these sections of the School Code.

unsatisfactory performance rating was within the Board's authority because this policy directly relates to the Board's exclusive right to determine its hiring guidelines. To the extent that PATs seek reinstatement, the disputed grievances are inarbitrable under both the CBA and section 10(b) of the Act. We agree with the appellate court that the Board was not obligated to arbitrate the instant grievances and that the IELRB clearly erred in finding that the Board violated section 14(a)(1) of the Act. See *id.* ¶¶ 34-37.

¶ 32                                    III. CONCLUSION

¶ 33        For the foregoing reasons, the judgment of the appellate court is affirmed and the cause remanded to the IELRB for further proceedings.

¶ 34        Affirmed and remanded.

¶ 35        JUSTICE KILBRIDE, dissenting:

¶ 36        The issue presented in this appeal is whether the Board of Education of the City of Chicago (Board) committed an unfair labor practice by refusing to arbitrate grievances alleging the Board placed "Do Not Hire" (DNH) designations in certain probationary teachers' personnel files without giving those teachers notice. There is no question that the ultimate decision on whether to rehire the probationary teachers cannot be made in the arbitration process but is within the Board's sole discretion. The grievants seek, among other things, enforcement of procedural protections in the parties' collective bargaining agreement (CBA) prohibiting placement of statements in a teacher's personnel file without giving the teacher notice and an opportunity to respond. The Illinois Educational Labor Relations Board (IELRB) found that the Board committed an unfair labor practice by refusing to arbitrate the grievances. In my view, the IELRB's decision is not clear error and should be confirmed. Accordingly, I respectfully dissent.

¶ 37        On administrative review, this court reviews the administrative agency's decision, not the decision of the appellate court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). As the majority holds, the issues in this case present mixed questions of law and fact subject to review for clear error. A decision is clearly erroneous only when "the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Review for clear error is significantly deferential to an administrative agency's experience in construing and applying the statute it administers. *AFM Messenger*, 198 Ill. 2d at 393-95.

¶ 38        In this case, the IELRB determined that the Board violated section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) by refusing to arbitrate the DNH grievances. Section 14(a)(1) of the Act provides that "[e]ducational employers, their agents or representatives are prohibited from: (1) [i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2010). An employer violates section 14(a)(1) and commits an unfair labor practice by refusing to arbitrate an arbitrable employee grievance. *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board*, 173 Ill. App. 3d 395, 408-09 (1988). In determining whether a grievance is

arbitrable, the IELRB must examine whether it falls within the terms of the collective bargaining agreement. *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board*, 200 Ill. App. 3d 370, 376 (1990). A school district may refuse to arbitrate a grievance when: (1) the district did not contractually agree to arbitrate the dispute or (2) the dispute is not arbitrable under section 10(b) of the Act (115 ILCS 5/10(b) (West 2010)) because its subject matter conflicts with Illinois law. *Chicago Teachers Union v. Illinois Educational Labor Relations Board*, 344 Ill. App. 3d 624, 636 (2003).

¶ 39    This court must, therefore, first determine whether the IELRB clearly erred in finding that the parties contractually agreed to arbitrate the grievances involving placement of the DNH designations in probationary teachers' personnel files. If the IELRB did not clearly err on that point, we must consider whether it clearly erred in finding the grievances arbitrable under section 10(b) of the Act.

¶ 40                               Contractual Agreement to Arbitrate

¶ 41    Article 3 of the CBA defines a grievance as "a complaint involving a work situation; a complaint that there has been a deviation from, misinterpretation of or misapplication of a practice or policy; or a complaint that there has been a violation, misinterpretation or misapplication of any provision of this Agreement." Article 3-5 provides for binding arbitration as part of the grievance procedure.

¶ 42    In this case, the IELRB observed that the language in the grievance clause is broad, allowing for arbitration of a grievance as long as it involves a "work situation." The IELRB determined that the grievances are not contractually precluded from arbitration given the broad language in the grievance clause and the absence of any exclusions. In my view, the IELRB did not clearly err in finding the grievances arbitrable under the broad definition provided in the CBA. The basis for placing the DNH designations in probationary teachers' personnel files was an evaluation of their conduct during work situations.

¶ 43    Additionally, the grievances in this case allege a violation of specific procedural protections in the CBA governing the placement of reports or statements in a teacher's personnel file. As the majority acknowledges, article 34-4 of the CBA provides that:

> "No derogatory statement about a teacher or other bargaining unit member originating outside of the Chicago public school system shall be placed in the teacher's or other bargaining unit member's personnel file, provided, further, that any official report or statement originating within the Chicago public school system may be placed in the teacher's or other bargaining unit member's personnel file only if the teacher or other bargaining unit member is sent a dated copy thereof at the same time. The teacher or other bargaining unit member may respond and such response shall be attached to the filed copy."

¶ 44    The grievances state probationary teachers did not receive notice that DNH designations were placed in their files. The grievances further allege the Board's policy violates specific provisions in the CBA, including article 34-4. Those allegations are clearly "complaint[s] that there has been a violation *** of any provision of this Agreement" within the express language of the grievance clause. Accordingly, the IELRB did not clearly err in determining that those grievances fall within the broad language in the grievance clause.

¶ 45    The majority, however, concludes that the IELRB misconstrued the CBA. The majority holds that employers may refuse to bargain over "matters of inherent managerial policy," and the DNH grievances relate to a matter of managerial policy involving the Board's ability to initiate employment or make hiring decisions, not to the terms and conditions of employment. Thus, the majority maintains that the matters alleged in the grievances are excluded from the bargaining process and cannot be covered by the grievance clause in the CBA.

¶ 46    I agree that employment decisions are a matter of inherent managerial policy and the Board has the sole right to determine whether probationary teachers are rehired. The grievances in this case, however, allege a clear violation of article 34-4 of the CBA, prohibiting placement of official reports or statements in a teacher's personnel file without giving the teacher prompt notice and an opportunity to respond. The grievants seek, among other things, notice to teachers of any DNH designation placed in their personnel files and removal of designations placed in files in violation of article 34-4. Those grievances do not interfere with the Board's right to make hiring decisions. Rather, they complain of a violation of a term and condition of employment involving placement of items in teachers' personnel files.

¶ 47    The plain intent of article 34-4 is to provide some basic protection for teachers encountering the specific circumstances presented in this case. Absent enforcement of that provision, a teacher would have no recourse if a DNH designation were placed in his or her personnel file wrongfully or by mistake. Article 34-4 is directed at preventing the secret placement of derogatory statements or reports in personnel files with no notice to employees. Those are the precise complaints alleged by the probationary teachers in this case.

¶ 48    The issue of whether the Board violated express procedural requirements in the CBA is arbitrable under the grievance clause. The IELRB did not clearly err in concluding the DNH grievances are arbitrable under the CBA.

¶ 49                    Arbitration Under Section 10(b) of the Act

¶ 50    The majority also concludes that the IELRB committed clear error in finding the DNH grievances arbitrable under section 10(b) of the Act. The majority holds that arbitration of the grievances would conflict with section 4 of the Act (115 ILCS 5/4 (West 2010)), stating employers are not required to bargain over "matters of inherent managerial policy" and would also violate several provisions of the School Code providing for those same management rights. The majority's determination is based on its claim that the DNH grievances interfere with the Board's authority to decide whether to rehire probationary teachers. The majority states the "DNH grievances attempt to force the Board to hire probationary teachers."

¶ 51    Section 4 of the Act states, in pertinent part:

> "Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of service, its overall budget, the organizational structure and selection of new employees and direction of employees. Employers, however, shall be required to bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by employee representatives." 115 ILCS 5/4 (West 2010).

¶ 52    The IELRB determined that section 4 does not apply to this case because it addresses bargaining, not arbitration. Section 4 does not indicate that the allegations of these grievances

are prohibited subjects of bargaining or preclude arbitration of the grievances. In my view, the IELRB did not clearly err in finding section 4 inapplicable to this case.

¶ 53    Even if section 4 and the School Code provisions cited by the majority were applicable, however, the grievances in this case do not conflict with the Board's authority to make hiring decisions. As noted above, the grievances allege violations of specific procedural protections set forth in the CBA. The grievances allege the Board violated article 34-4 of the CBA by placing DNH designations in probationary teachers' personnel files without giving notice to the teachers. Article 34-4 prohibits placement of official reports or statements in a teacher's personnel file without giving the teacher notice and an opportunity to respond. The grievants seek, in part, notice to teachers of any DNH designation placed in their personnel files and removal of designations placed in files in violation of article 34-4.

¶ 54    Those allegations do not conflict with the Board's authority to make the ultimate decision on whether to rehire the probationary teachers. Rather, they seek to enforce basic procedural protections the parties bargained for in the CBA. The failure to give probationary teachers the notice and opportunity to respond required by article 34-4 is a violation of a term and condition of employment. Without the enforcement of article 34-4, the probationary teachers would have no recourse or opportunity to be heard if a DNH designation were placed in their file wrongfully or by mistake.

¶ 55    As the majority recognizes, the Board may agree to follow certain procedures before making hiring decisions. *Supra* ¶ 30 (citing *Lockport Area Special Education Cooperative v. Lockport Area Special Education Cooperative Ass'n*, 33 Ill. App. 3d 789, 794 (1975), and *Cobden Unit School District No. 17 v. Illinois Educational Labor Relations Board*, 2012 IL App (1st) 101716, ¶ 21). In *Lockport Area Special Education Cooperative*, 33 Ill. App. 3d at 792, the appellate court observed that school boards had been "permitted to agree to procedural prerequisites to the exercise of [their] discretion" on whether to rehire probationary teachers, including "notice, hearing, conferences with the teacher and an opportunity to remedy alleged deficiencies." (Emphasis omitted.) Article 34-4 is a procedure the Board agreed to follow before making its discretionary hiring decision. It does not interfere with the Board's ultimate authority to decide whether to rehire probationary teachers. Accordingly, the IELRB did not commit clear error in finding the grievances arbitrable under section 10(b).

¶ 56    In sum, I would hold that the IELRB did not clearly err in finding the DNH grievances in this case arbitrable under the CBA and section 10(b) of the Act. The IELRB's decision that the Board violated section 14(a)(1) by refusing to arbitrate the grievances should be confirmed.