NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 200029-U

NO. 4-20-0029

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 8, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LABORERS LOCAL 773, | ) | Direct Administrative |
| Petitioner, | ) | Review of the Illinois Labor |
| v. | ) | Relations Board, State Panel |
| THE ILLINOIS LABOR RELATIONS BOARD, STATE | ) | No. S-CA-18-007 |
| PANEL, and ALEXANDER COUNTY HOUSING | ) | |
| AUTHORITY, | ) | |
| Respondents. | ) | |
| | ) | |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We find no error with the Board's decision to dismiss the Union's unfair labor
practice complaint.

¶ 2    Pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017) and section 11(e)

of the Illinois Public Labor Relations Act (Labor Act) (5 ILCS 315/11(e) (West 2018)),

petitioner, Laborers Local 773 (Union), seeks direct review of the decision of respondent, Illinois

Labor Relations Board, State Panel (Board), dismissing the Union's complaint against

respondent, Alexander County Housing Authority (Housing Authority).  The complaint alleged

the Housing Authority violated section 10(a)(1) and (4) of the Labor Act (5 ILCS 315/10(a)(1),

(4) (West 2016)) when the Housing Authority repudiated its collective bargaining agreement

with the Union.  We affirm.

¶ 3                                 I. BACKGROUND

¶ 4        In lieu of a hearing, the parties submitted stipulations of fact.  The Union and Housing Authority stipulated the Housing Authority was a "public employer" under section 3(o) of the Labor Act (5 ILCS 315/3(o) (West 2016)) and subject to the jurisdiction of the State Panel of the Board pursuant to section 5(a-5) of the Labor Act (5 ILCS 315/5(a-5) (West 2016)). Moreover, the Union was a labor organization as defined in section 3(i) of the Labor Act (5 ILCS 315/3(i) (West 2016)).

¶ 5        The stipulated facts further provided the Union and Housing Authority's collective bargaining agreement expired on September 30, 2015.  A copy of that agreement was included as a joint exhibit.  The Housing Authority and the Union engaged in bargaining over a successor agreement.  During February 2016, the United States Department of Housing and Urban Development (HUD) took possession of the Housing Authority under section 1437d(j)(3)(A)(iv) of title 42 of the United States Code (42 USC § 1437d(j)(3)(A)(iv) (2012)) after HUD determined the Housing Authority (1) was in substantial default of its consolidated annual contributions contract with HUD and (2) had violated provisions of the consolidated annual contributions contract, as well as federal statutes and regulations implementing HUD's low rent housing program.

¶ 6        On August 1, 2016, the Union and the Housing Authority held a negotiations meeting, during which they agreed a modified and more comprehensive agreement would be drafted and presented.  On December 22, 2016, a revised agreement was presented to the Union. The Union then presented a counterproposal to the revised agreement on February 27, 2017.  The Union and Housing Authority agreed to mediation to assist in their efforts to bargain a successor collective bargaining agreement.  On June 26, 2017, the Union and Housing Authority met for mediation but did not reach an agreement on a successor collective bargaining agreement.  On

June 27, 2017, the Secretary of HUD issued a determination directing the immediate abrogation of the collective bargaining agreement between the Housing Authority and the Union under section 1437d(j)(3)(D)(i)(I) of title 42 of the United States Code (42 USC § 1437d(j)(3)(D)(i)(I) (2012)), and the collective bargaining agreement was abrogated as of the issuance of that determination. On June 28, 2017, Towanda Macon, HUD-appointed Housing Authority executive director/HUD Co-Administrator, sent a letter to unit members, informing them (1) their employment would be terminated in 30 days, (2) the collective bargaining agreement had been cancelled, (3) they were not entitled to termination benefits or rights of seniority since the collective bargaining agreement had been terminated, and (4) they would receive all of the compensation to which they were entitled to under state law. A copy of one of the letters was included as the second joint exhibit.

¶ 7     On July 12, 2017, the Union filed a complaint against the Housing Authority with the Board. The date of the alleged wrongful action was June 28, 2017. The complaint asserted the Housing Authority sent correspondence to members of the bargaining unit that indicated the Housing Authority was terminating the collective bargaining agreement between the Housing Authority and the Union. It further alleged the Housing Authority unilaterally terminated the collective bargaining agreement in violation of the Labor Act. Additionally, the complaint alleged the Housing Authority failed and/or refused to bargain with the Union in good faith. The Union requested an order (1) directing the Housing Authority to bargain in good faith with the Union over a successor collective bargaining agreement and (2) enjoining the Housing Authority from terminating any bargaining-unit employees' employment. Attached to the complaint was one of the June 28, 2017, letters from Macon to a bargaining-employment employee.

¶ 8     The Housing Authority and Union filed briefs. To its first brief, the Housing

Authority attached (1) HUD's June 27, 2017, determination abrogating the collective bargaining agreement and (2) Macon's affidavit. On May 16, 2019, the administrative law judge (ALJ) entered its recommended decision and order. The ALJ found the threshold question was whether the Housing Authority exercised control over the actions which formed the basis of the alleged unfair labor practices. It noted the Union, as the party bringing the charge, had the burden of proving the allegations set forth in the charge. The ALJ first stated the plain language of section 1437d grants HUD the authority to abrogate any contract if HUD's secretary determines certain conditions have been met. Nothing in the provision suggests HUD needs to first secure the acquiescence of a housing authority before doing so. The ALJ further found the record contained no evidence the Housing Authority in this case had "any power, authority, influence or control of any sort" over HUD's decision to abrogate the collective bargaining agreement. The ALJ also rejected the Union's argument the determination issued by HUD on June 27, 2017, was not an immediate abrogation of the collective bargaining agreement but was a directive to the Housing Authority to abrogate the collective bargaining agreement. The ALJ concluded the Housing Authority did not violate the Labor Act when HUD abrogated the Union and Housing Authority's contract because no evidence showed the Housing Authority has control over that issue. The ALJ also determined the Housing Authority did not violate the Labor Act by issuing notice of termination letters to the Union's members because no evidence suggested the Housing Authority had control over that decision. Even if the Housing Authority had control, the Housing Authority did not violate the Labor Act in doing so because there was no longer a contract for it to repudiate and its decision was rational and not done in bad faith.

¶ 9        The Union raised five exceptions to the ALJ's recommended decision and order. The Union asserted the ALJ did the following: (1) failed to address the Union's argument

concerning the improperly included exhibits in the Housing Authority's brief; (2) incorrectly held the Housing Authority had no control over the decision to abrogate the collective bargaining agreement based on the stipulated record; (3) erroneously interpreted the HUD Act; (4) incorrectly held the HUD statute authorizes the termination of a collective bargaining agreement, which runs afoul of the Labor Act and has serious policy implications; and (5) erroneously held the Housing Authority did not violate the Labor Act when it sent termination notices to the bargaining unit. The Housing Authority filed a response to the Union's exceptions. On December 11, 2019, the Board entered its decision and order, finding the Union's exceptions were meritless and adopting the ALJ's recommendation and order as the decision of the Board.

¶ 10 On January 14, 2020, the Union filed a timely petition for review of the Board's order dismissing its complaint against the Housing Authority. Ill. S. Ct. R. 335 (eff. July 1, 2017). Accordingly, we have jurisdiction under Illinois Supreme Court Rule 335 (eff. July 1, 2017).

¶ 11                                    II. ANALYSIS

¶ 12                              A. Standard of Review

¶ 13 A party aggrieved by a final order by the Board may obtain judicial review in the appellate court of the Board's order entered under the Labor Act in accordance with the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)). 5 ILCS 315/11(e) (West 2018). In such appeals, we generally review the Board's final administrative decision and not the recommended decision and order of the ALJ. *Slater v. Illinois Labor Relations Board, Local Panel*, 2019 IL App (1st) 181007, ¶ 13, 144 N.E.3d 618. However, as here, when the Board adopts the ALJ's recommended decision, it is appropriate to review the ALJ's findings of fact

and conclusions of law in reviewing the Board's decision. See *Petrovic v. Department of Employment Secretary*, 2016 IL 118562, ¶ 22, 51 N.E.3d 726.

¶ 14        "Under the Administrative Review Law, the scope of judicial review extends to all questions of law and fact presented by the record before the court." *Board of Education of City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14, 69 N.E.3d 809. "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends on whether the issue presented is a question of law, fact, or a mixed question of law and fact." *City of Chicago*, 2015 IL 118043, ¶ 14. With a question of law, we review *de novo* the Board's conclusion. *City of Chicago*, 2015 IL 118043, ¶ 15. Thus, this court is not bound by the Board's interpretation of a statute, but the Board's interpretation remains relevant where a reasonable debate about the meaning of the statute exists. *City of Chicago*, 2015 IL 118043, ¶ 15.

¶ 15        "In contrast, '[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.' " *City of Chicago*, 2015 IL 118043, ¶ 15 (quoting 735 ILCS 5/3-110 (West 2010)). Accordingly, in reviewing the Board's factual findings, we will not reweigh the evidence or substitute our judgment for that of the Board. *City of Chicago*, 2015 IL 118043, ¶ 15. Rather, this court simply determines whether the findings of fact are against the manifest weight of the evidence. *City of Chicago*, 2015 IL 118043, ¶ 15. A finding by the Board "is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Engle v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 162602, ¶ 30, 103 N.E.3d 382.

¶ 16        "A mixed question of law and fact asks the legal effect of a given set of facts." *City of Chicago*, 2015 IL 118043, ¶ 16. With such a question, the reviewing court determines

whether established facts satisfy applicable legal rules. *City of Chicago*, 2015 IL 118043, ¶ 16. We review the Board's conclusion on a mixed question of law and fact for clear error. *City of Chicago*, 2015 IL 118043, ¶ 16. A conclusion is " 'clearly erroneous' when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *City of Chicago*, 2015 IL 118043, ¶ 16. The Board's ultimate determination an unfair labor practice was not committed is a mixed question of law and fact. *Slater*, 2019 IL App (1st) 181007, ¶ 14. This court may affirm the Board's decision on any basis supported by the record, regardless of the Board's specific basis or reasoning for its decision. *Slater*, 2019 IL App (1st) 181007, ¶ 13.

¶ 17                                          B. Exhibits

¶ 18          The Union asserts the Board erred by dismissing its contention the ALJ considered facts outside the record. Specifically, it contends the ALJ should have struck the exhibits attached to the Housing Authority's initial brief, which addressed the issue upon which the ALJ rested its ruling. The Union recognizes the ALJ did not cite to the exhibits in its decision but contends such documents tainted the ALJ's decision. The Board notes it correctly found the Union's contention was meritless because it was incorrect and based on speculation. The Board also points out the ALJ specifically identified the joint stipulations and exhibits in making its findings. Since the ALJ's decision does not indicate it considered the allegedly improper exhibits, we find the Board did not err by finding the Union's contention meritless.

¶ 19                              C. Liability Under the Labor Act

¶ 20          The Union further contends the Housing Authority had sufficient control over wages, hours, or conditions of employment to be liable under the Labor Act. The Board asserts it did not clearly err in determining the Housing Authority was not liable under the Labor Act for the decision to abrogate the collective bargaining agreement because the Housing Authority

lacked control over that decision.

¶ 21 In its complaint, the Union contended the Housing Authority committed an unfair labor practice under section 10(a)(4) of the Labor Act (5 ILCS 315/10(a)(4) (West 2016)) when the Housing Authority unilaterally terminated the collective bargaining agreement between it and the Union and refused to bargain with the Union in good faith. Section 10(a)(4) provides it is an unfair labor practice "for an employer or its agents" "to refuse to bargain collectively in good faith with a labor organization which is the exclusive representative of public employees in an appropriate unit, including, but not limited to, the discussing of grievances with the exclusive representative." 5 ILCS 315/10(a)(4) (West 2016). Section 7 of the Labor Act (5 ILCS 315/7 (West 2016)) addresses the duty to bargain and requires, *inter alia*, a public employer "to negotiate in good faith with respect to wages, hours, and other conditions of employment." Unilateral changes by employers in the terms and conditions of employment constitute an unfair labor practice because they deprive employees of the right to bargain. *Board of Education of Sesser-Valier Community Unit School District No. 196 v. Illinois Education Labor Relations Board*, 250 Ill. App. 3d 878, 882, 620 N.E.2d 418, 421 (1993).

¶ 22 The Union acknowledges the Board has found that, when the respondent to the charge lacked control over the petitioner's members' terms and conditions of employment at the time of the alleged misconduct, the respondent could not be held liable under the Labor Act for a refusal to bargain in good faith. *International Brotherhood of Teamsters, Local 700*, 34 PERI ¶ 136 (ILRB State Panel 2018). However, the Union argues a respondent's claim it lacked control over wages, hours, or conditions should be treated as an affirmative defense with the burden of proof on the employer. Under section 10 of the Labor Act, it is an unfair labor practice if "the employer or its agents" do one of the enumerated actions. "[T]he party alleging

an unfair labor practice has the burden of proof." *County of Cook v. Illinois Labor Relations Board*, 2012 IL App (1st) 111514, ¶ 25, 976 N.E.2d 493. Thus, the petitioner must prove the employer or its agents were the entity that committed one of the enumerated actions. In the decision in *International Brotherhood of Teamsters, Local* 700, 34 PERI ¶ 136, whether the charged entity exercised control over the employees' terms and conditions of employment was referred to as a "threshold requirement" to finding the respondent liable for violations of the Labor Act. Thus, we disagree with the Union's assertion the employer's lack of control is an affirmative defense.

¶ 23        The Union also asserts the Board failed to recognize the Housing Authority continued to negotiate a new collective bargaining agreement with the Union after HUD took possession in February 2016. It contends the whole bargaining process was a waste of time if the Housing Authority had no authority. However, the parties stipulated HUD's Secretary issued a determination abrogating the collective bargaining agreement pursuant to section 1437d(j)(3)(D)(i)(I) of title 42 of the United States Code (42 USC § 1437d(j)(3)(D)(i)(I) (2012)), which allows the Secretary of HUD to do the following:

> "abrogate any contract to which the United States or an agency of the United States is not a party that, in the written determination of the Secretary (which shall include the basis for such determination), substantially impedes correction of the substantial default, but only after the Secretary determines that *reasonable efforts to renegotiate such contract have failed*." (Emphasis added.)

Since the Secretary cannot abrogate a contract unless reasonable efforts to renegotiate that contract have failed, the negotiations were not a waste of time and the fact the negotiations took place do not indicate the Housing Authority had a role in the decision to abrogate the contract.

¶ 24         The Union further contends nothing in the record shows the Housing Authority had no role in the decision to abrogate the collective bargaining agreement. Additionally, it notes the termination letters to the Union's members were signed by Macon, who held herself out as the HUD-appointed executive director. The Board notes the stipulated facts were that, in February 2016, HUD took possession of the Housing Authority pursuant to section 1437d(j)(3)(A)(iv) of title 42 of the United States Code (42 USC § 1437d(j)(3)(A)(iv) (2012)). Also, on June 27, 2017 the secretary of HUD issued a determination directing the immediate abrogation of the collective bargaining unit between the Housing Authority and the Union under section 1437d(j)(3)(D)(i)(I) of title 42 of the United States Code (42 USC § 1437d(j)(3)(D)(i)(I) (2012)), and the collective bargaining agreement was abrogated as of the issuance of that determination. The Board also notes the termination letters stated HUD determined it was necessary to cancel the collective bargaining agreement.

¶ 25         In its recommended order, the ALJ noted section 1437d(j)(3)(D)(i)(I) of title 42 of the United States Code (42 USC § 1437d(j)(3)(D)(i)(I) (2012)) grants HUD the authority to abrogate any contract if HUD's Secretary determines certain conditions have been met. It explained nothing in the statute suggested HUD needed to secure the Housing Authority's acquiescence before abrogating the collective bargaining agreement. Additionally, the ALJ found the record contained no evidence the Housing Authority had any involvement in HUD's decision to abrogate the collective bargaining agreement.

¶ 26         Even considering the bargaining between the Housing Authority and the Union is circumstantial evidence the Housing Authority was involved in the abrogation of the collective bargaining agreement, the other stipulated facts indicate it was HUD that was in control and made the determination to abrogate the collective bargaining agreement. According to the

stipulated facts, HUD took possession of the Housing Authority in February 2016 and issued the determination directing the immediate abrogation of the collective bargaining agreement on June 27, 2017. This case is similar to *International Brotherhood of Teamsters, Local* 700, 34 PERI ¶ 136, where a federal court had appointed a transitional administrator to bring the respondent into compliance with a settlement agreement in a class action lawsuit. The Board concluded the evidence was insufficient to show the respondent exercised control over the employees' terms and conditions of employment at the time the alleged misconduct occurred. *International Brotherhood of Teamsters, Local* 700, 34 PERI ¶ 136. "The Illinois Supreme Court has made clear that an entity's theoretical control over employees' terms and conditions of employment is not relevant to the question of whether an entity is liable for an unfair labor practice—only the actual exercise of control matters." *International Brotherhood of Teamsters, Local* 700, 34 PERI ¶ 136 (citing *American Federation of State, City & Municipal Employees, Council 31 v. State Labor Relations Board*, 216 Ill. 2d 569, 578-80, 839 N.E.2d 479, 485-86 (2005) (applying joint employer analysis)).

¶ 27    Here, we are not left with the definite and firm conviction a mistake has been committed by the Board finding HUD and not the Housing Authority was the entity in actual control of the decision to abrogate the collective bargaining agreement between the Union and the Housing Authority.

¶ 28                    D. Remaining Issues

¶ 29    The Union contends the Board incorrectly interpreted section 1437d(j)(3)(D)(i)(I) of title 42 of the United States Code (42 USC § 1437d(j)(3)(D)(i)(I) (2012)) to provide HUD has the authority to abrogate any contract if HUD determines certain conditions are met. The Union also argues the HUD statute conflicts with section 15 of the Labor Act (5 ILCS 315/15 (West

2012)). The Board contends it properly concluded whether HUD lacked authority to abrogate the collective bargaining agreement was not an issue before it because its jurisdiction did not extend to federal agencies. The Union responds that, since the ALJ cited the federal statute, it is ripe for adjudication before this court. Moreover, it asserts that, if the HUD lacked authority to terminate the collective bargaining agreement, then the Housing Authority's letter could be considered a termination of the collective bargaining agreement and the letter violates the Labor Act.

¶ 30    A basic tenet of justiciability is the following:

" '[r]eviewing courts will not decide moot or abstract questions or render advisory opinions. Courts of review ordinarily will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided.' " *People ex rel. Sklodowski v. State*, 162 Ill. 2d 117, 130, 642 N.E.2d 1180, 1185 (1994) (quoting *Barth v. Reagan*, 139 Ill. 2d 399, 419, 564 N.E.2d 1196, 1205 (1990)).

Initially, we note the statute was cited in the stipulated facts, and thus was a proper part of the background facts on the issue. However, the citation to the statute does not necessarily mean its proper application of the statute was critical to the ultimate determination of the case. Further, the Board found the abrogation of the collective bargaining agreement was done by HUD on June 27, 2017. This court has found that conclusion was not clear error. Even if HUD acted beyond its authority in abrogating the collective bargaining agreement, the propriety of HUD's conduct was not before the Board because the charge was against the Housing Authority. Moreover, HUD, as a federal agency, is not a "public employer" under the Labor Act (see 5 ILCS 315/3(o) (West 2016) (defining "public employer")). Therefore, even if HUD lacked

authority to abrogate the collective bargaining agreement, it would not affect the outcome of the appeal because HUD, and not the Housing Authority, is still the entity that terminated the collective bargaining agreement on June 27, 2017. As the Board notes, the Union stipulated the collective bargaining agreement was abrogated as of the HUD's secretary's determination on June 27, 2017. Thus, any alleged actions by the Housing Authority on June 28, 2017, cannot constitute an abrogation of the collective bargaining agreement. Accordingly, we will not address the remainder of the Union's issues because to do so would be giving advisory opinions which would not affect the outcome of the appeal.

¶ 31                                        III. CONCLUSION

¶ 32          For the reasons stated, we affirm the Board's decision.

¶ 33          Board decision affirmed.