# Illinois Official Reports

## Appellate Court

***Antlitz v. Forest Preserve District*, 2020 IL App (1st) 191415**

| | |
|---|---|
| Appellate Court Caption | DEBORAH ANTLITZ, Plaintiff-Appellee, v. THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-19-1415 |
| Filed | March 26, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-10061; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Hubert O. Thompson and Alan W. Brothers, of Brothers & Thompson, P.C., of Chicago, for appellant.<br><br>Cynthia M. Rote, of Integrate Legal PC, of Rockton, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Reyes and Burke concurred in the judgment and opinion. |

¶ 1 Defendant Forest Preserve District of Cook County (Forest Preserve) appeals the circuit court's order reversing a July 11, 2018, order by the Employee Appeal Board (board). The board had suspended plaintiff Deborah Antlitz, an employee of defendant, for 15 days, and the circuit court reversed this order. The board had suspended her due to certain actions by plaintiff in January 2016. Defendant seeks reinstatement of the board's July 11, 2018, order and reinstatement of its 15-day suspension. For the following reasons, we remand for further proceedings.

¶ 2                                    BACKGROUND
¶ 3                               I. Procedural Overview
¶ 4 We summarize the findings, exhibits, and testimony in the next section, but first we provide a procedural overview.

¶ 5 The Forest Preserve defendant terminated plaintiff, an employee, and plaintiff appealed the decision to the board. On October 26, 2016, the board adopted a recommendation by the administrative law judge (ALJ) to reduce plaintiff's termination to a 29-day suspension. Both parties appealed the board's ruling to the circuit court of Cook County. On January 10, 2018, the circuit court reversed the board's October 26, 2016, decision "solely as to the imposition of a 29-day suspension," but affirmed the "remainder of the [d]ecision" and remanded the matter to the board "for the imposition of lesser discipline as to the January 19, 2016, incident consistent with Policy 8.042(d)."

¶ 6 Upon remand, the board stated that it was conducting a *de novo* hearing on the issues, and on July 11, 2018, the board issued its second order in this case, which imposed a 15-day suspension. On August 8, 2018, plaintiff appealed the board's July 11, 2018, order to the circuit court on the ground that the board had failed to adhere to the circuit court's order to impose progressive discipline.[1] On June 26, 2019, the original circuit court judge, who had reversed the board's original October 26, 2016, decision, found that the board had exceeded the scope of its remand. The circuit court's June 26, 2019, order stated in relevant part: "This court did not give the Board leave to conduct a *de novo* proceeding. This case was remanded solely for the imposition of lesser discipline *** consistent with Policy 8.042(d). This court did not give the Board leave *** to make any new factual findings." In addition, the circuit court found: "even if this court were to consider the Board's new findings, reversal would still be warranted."

¶ 7                               II. Board's Findings in 2016
¶ 8 Defendant's original termination of plaintiff stemmed from three incidents that occurred in January 2016. On October 3, 2016, after an evidentiary hearing, the ALJ made detailed findings which were adopted by the board on October 26, 2016.

¶ 9 Plaintiff had been employed by defendant for 25 years as an ecologist. Charles "Chip" O'Leary, her immediate supervisor and deputy director for resource management, had been employed with defendant for four years. Troy Showerman, the resource project manager, held

_____

[1]Progressive discipline is explained, *infra*, in paragraph 28.

that position for two years. John McCabe, the director of resource management, held that position for less than two years.

¶ 10 In the fall of 2011, plaintiff filed an internal complaint alleging discrimination and unprofessional conduct by another employee. From the beginning of her employment until November 2012, plaintiff was not the subject of any formal discipline. However, in November 2012, plaintiff was disciplined for inappropriate interference with a contractor, resulting in work delay, for which she served a three-day suspension. In 2012, plaintiff was evaluated by O'Leary, her new supervisor, and received a rating that was much lower than in prior years. Plaintiff was placed on a performance plan through March 2013. The plan was not continued due to satisfactory performance.

¶ 11 On May 8, 2013, plaintiff filed a charge with the Illinois Department of Human Rights, alleging that her suspension and low rating were due to sex discrimination and in retaliation for filing an internal complaint. The charge was dismissed in August 2014.

¶ 12 In 2015, much of plaintiff's work time was spent drafting the Bluff Spring Fen[2] Nature Reserve Plan, a five-year plan outlining a strategy to preserve the area. The plan had to be signed by defendant and the Friends of the Bluff Spring Fen, and then approved by the Illinois Nature Preserve Commission. The prior 2010 plan had been drafted by Steven Byers, who is with the commission. Since 1990, Byers had responsibility for the fen's oversight and protection.

¶ 13 On December 10, 2015, plaintiff sent an email, with the "nearly finished" plan attached, to O'Leary, Byers, Leon Halloran, and Doug Taron. Leon Halloran is the volunteer steward at the Bluff Spring Fen, and Doug Taron is the president of the Friends of Bluff Spring Fen. Both Halloran and Taron are signatories of the five-year plan. Prior to this date, there had been at least two earlier drafts sent to the same recipients.

¶ 14 In December 2015, plaintiff also sent an email regarding her assessment of a controlled burn at the Bluff Spring Fen to other employees of defendant and to Byers. After this email, O'Leary advised plaintiff that she should not have included Byers. On December 14, 2015, plaintiff sent an email seeking clarification: "Please clarify your position. Are you saying I am no longer authorized to include in discussion long standing stewards such as Steve Byers? I have worked with others long and hard to include partners for over twenty years. Is this a new policy of less transparency and accountability?" On December 14, 2015, O'Leary replied she should "communicate problems in the field" to him.

¶ 15 On December 18, 2015, O'Leary replied to everyone in the email chain regarding the five-year Bluff Spring Fen plan and stated that he would review it again and "send on any comments." At some time prior to January 19, 2016, O'Leary annotated the draft of the five-year plan with his comments and emailed them to plaintiff. Plaintiff disagreed with some of his comments and emailed the draft with his comments and her responses to the people in the email chain.

¶ 16 In January 2016, Troy Showerman and his staff asked plaintiff to go to the site of the Busse South Shoreline Restoration Project in order to review the progress of the contractor, Tallgrass

---

[2]A "fen" is defined as "low land that is covered wholly or partly with water unless artificially drained and that usually has peaty alkaline soil and characteristic flora (as of sedges and reeds)." Merriam-Webster Online Dictionary, https://merriam-webster.com/dictionary/fen (last visited Mar. 4, 2020) [https://perma.cc/VJ6M-Y7MP].

Restoration. Plaintiff met on site on January 14, 2016, with John Shannon of Tallgrass Restoration, and on January 22, 2016, with a foreman named "Bob." After plaintiff's conversation with Bob, Shannon contacted Showerman and stated that Bob had complained to Shannon that Bob was receiving mixed signals that put a "damper" on work. According to Bob, plaintiff did not seem happy about the removal of some elm and ash trees. Showerman replied that "doesn't sound like a problem" and that, if this continues to be an issue, he and his staff would "work to get a more consistent message out." Plaintiff was not part of the email chain between Shannon and Showerman. In addition, no one asked plaintiff about what had happened in the field, and she was not disciplined at the time for this incident. Neither Bob nor Shannon testified at the evidentiary hearing.

¶ 17 However, on January 27, 2016, O'Leary wrote to plaintiff, advising her that the contractor on the Busse South Shoreline project had called for clarification and that, if there were concerns in the future, she should reach out to Showerman. Plaintiff responded the same day, asking "what was the clarification about?" O'Leary did not respond, so she wrote him again, two days later, to say that to "follow-up," she had spoken to Showerman yesterday. Showerman told her that the contractor had asked for clarification on a different topic,[3] namely, the removal of standing dead ash near a wetland. Plaintiff observed that this was not an item on the original work order but one that the contractor had recommended doing when she had visited the site. At the time, she had pointed out to the contractor that it was not part of the work order, but she observed that he could bring this suggestion to "Contract Management." O'Leary never informed plaintiff that her conduct was subject to discipline or constituted any type of infraction.

¶ 18 On January 25, 2016, plaintiff met with O'Leary for her annual performance review. Her rating was lower than it had been in prior years. However, she did not receive any written reprimands, and she was not placed on a performance plan. In the "Employee Comment" section of the review, plaintiff wrote that her "oppositions pertained to actions that were violations of the Illinois Nature Preserve Plans, and the Illinois Endangered Species Act." After O'Leary asked her to make a copy for her files, plaintiff stood up and handed him a copy of an email from an investigator in the Independent Inspector General's office, dated November 18, 2015, which sought updated information from plaintiff. The email identified O'Leary and the Resource Management Department as subjects of a possible investigation and referenced an inquiry that plaintiff had initiated. When plaintiff returned to the room, she asked about some management plans. However, O'Leary did not respond and terminated the meeting. O'Leary testified that he felt intimidated and threatened.

¶ 19 Before the ALJ, plaintiff contended that, after her evaluation, she inquired about an issue relating to ecology within the forest preserves, and she showed O'Leary a copy of an email indicating that the Office of the Inspector General was investigating whether defendant had violated the Endangered Species Act. Plaintiff wanted to know whether defendant had addressed the issue and was attempting to discuss a pressing work-related issue with her supervisor.

¶ 20 On February 4, 2016, O'Leary issued a "Disciplinary Action Form" to plaintiff, and a predisciplinary hearing was held. On March 28, 2016, defendant terminated plaintiff's

---

[3]This topic was different than the topic brought up earlier by Bob, which was that plaintiff did not seem happy about the removal of some ash and elm trees.

employment, effective immediately. Plaintiff filed a timely appeal with the board, and the ALJ held a hearing on August 24, 2016.

¶ 21    Before the ALJ, defendant argued that plaintiff's termination was justified by three incidents that occurred within six days of each other in January 2016: (1) plaintiff's forwarding on January 19, 2016, the draft of the five-year plan, with O'Leary's comments and her responses, to Byers and others; (2) plaintiff's allegedly mixed signals to a contractor on January 22, 2016, concerning the Busse South Shoreline project; and (3) her handing to O'Leary, after her performance review on January 25, 2016, an email from the Inspector General.

¶ 22    In her findings, the ALJ observed that, with respect to the January 19, 2016, incident, "[w]hen questioned, O'Leary did not know of any specific harmful repercussions as a result of [plaintiff's] actions." In addition, the ALJ found that

> "O'Leary never told plaintiff not to send the document to the outsiders, and in fact at an earlier time, he sent a 'reply' to all parties *** that his comments would be forthcoming. When O'Leary sent his comments to [plaintiff] he did not tell her it was confidential or that it could not be shared *** [Plaintiff] contends that this exchange of comments is part of a well-established collaborative approach."

Plaintiff also testified that she had difficulty obtaining responses from O'Leary. "Neither Halloran nor Byers testified to any unusual reaction to the receipt of the document. O'Leary did not testify as to any specific adverse feedback from any recipient." However, the ALJ found that plaintiff "exhibited poor judgment" in forwarding the document. The ALJ found "no evidence that [plaintiff] was motivated by a desire to harm or embarrass O'Leary or [defendant]." Instead, plaintiff "appeared to be motivated, if not driven, by a mission to finish the plan."

¶ 23    The ALJ found that defendant had sustained its burden to show that it had good cause to discipline plaintiff for her conduct on January 19, 2016, but had failed to show good cause for termination. The ALJ found that, for the January 19, 2016, incident, plaintiff "should have received the lesser discipline of a 29-day suspension with an admonishment that any further conduct of this sort can result in termination."

¶ 24    With respect to the incident on January 22, 2016, involving the Busse South Shoreline project contractor, the ALJ found "no evidence of record that work was stopped or that [plaintiff's] comments or criticisms caused any financial loss" to defendant. The ALJ concluded that there was "insufficient factual support in the record for any discipline to be imposed as a result of this incident."

¶ 25    With respect to the incident on January 25, 2016, after the performance review, plaintiff testified that she rarely had occasion to meet with O'Leary, so she wanted to take the opportunity to obtain information. The ALJ found that the conversation at the performance review was "indicative of the toxic nature of this employment relationship." The ALJ observed that "[t]he animosity and lack of trust" between plaintiff and her supervisor was "palpable during the hearing." However, the ALJ did not find that plaintiff created the toxic relationship; rather, it was "impossible to know who was responsible for the decline." On the one hand, "[w]hile [plaintiff] is an experienced and competent ecologist she is not *** easy." "Management, on the other hand[,] appears to be unable or unwilling to include her on the team." The ALJ found that plaintiff's act of handing the email to O'Leary was the "immature" action of "a frustrated employee." However, O'Leary's testimony that he felt intimidated was

an "exaggerated" reaction. The ALJ observed that "[t]o discipline [plaintiff] for initiating a complaint" was "arguably retaliatory." Again, the ALJ found that "[n]o discipline" was "merited."

¶ 26    The ALJ concluded by stating that, based on the entire record, "as well as the length of [plaintiff's] service and the absence of meaningful progressive discipline, the ALJ finds that [defendant] did not have good cause to terminate [plaintiff] and that she should be reinstated to her former position, subject to a 29-day suspension."

¶ 27                          III. 2018 Circuit Court Order

¶ 28    The board adopted the ALJ's findings, and both parties appealed to the circuit court. On January 10, 2018, the circuit court observed in a written order that, "except for major cause infractions, discipline includes the following steps under Policy 8.042(d): (1) first offense—oral reprimand; (2) second offense—written reprimand; (3) third offense—suspension; (4) fourth offense—termination." Antlitz v. Forest Preserve District, No. 16 CH 15524 (Cir. Ct. Cook County Jan. 10, 2018) (citing Cook County Personnel R. 8.042 (eff. Jan. 24, 2007)). The court observed that the ALJ had found both "that progressive discipline should have been applied" and that plaintiff had never been formally disciplined for this type of behavior.

¶ 29    With respect to the December 2015 email exchange in which O'Leary had advised plaintiff to communicate problems in the field to him, the ALJ found that O'Leary's email did not constitute discipline but was merely an informal caution.[4] Referring to this email, the ALJ had expressly found that plaintiff "was not disciplined." Similarly, later in her findings, the ALJ repeated that plaintiff was not "formally disciplined" in the December 2015 email, but rather was "counseled." Like the ALJ, the circuit court found that the December 14, 2015, email was merely an "informal[ ] caution[ ]."

¶ 30    The circuit court concluded that, "[b]ased on the ALJ's own findings, the January 19, 2016 forwarding of the draft document was, at most, a second offense."[5] The court then observed that "a second offense warrants a written reprimand, not a suspension." As a result, the court reversed the suspension and remanded for the imposition of a sanction consistent with Cook County Personnel Rule 8.042(d), as discussed in its order. The board did not seek to appeal this order.

¶ 31                        IV. Board's 2018 Order on Remand

¶ 32    On remand before the board, defendant sought a suspension of no more than 15 days and not less than 10 days. Defendant argued that, although written reprimands are often appropriate for second offenses, a suspension may be warranted even for a second, nonmajor offense. In response, plaintiff argued that defendant's allegations did not rise to the level necessary to

---

[4]At one point, the ALJ mistakenly referred to this email exchange as having taken place in December 2014. However, it is clear that this is a typo because, at the end of this same sentence, she cites Exhibit 26 which is the email exchange from December 2015.

[5]For over 20 years of employment, plaintiff was not the subject of any formal discipline. However, in the fall of 2012, plaintiff was disciplined for inappropriate interference with a contractor, resulting in work delay, for which she served a 3-day suspension.

bypass the normal steps in the progressive discipline process and that she was at no more than step one of the progressive disciplinary ladder, which was an oral reprimand.

¶ 33 The board stated that it was conducting "a *de novo* proceeding on remand *** in which evidence is heard and findings are made." Although the board's order states that it was conducting a *de novo* proceeding, the appellate record does not contain a transcript of this hearing and does not indicate that another evidentiary hearing was held. The board's order contained a list entitled "Findings," most of which were simply a restatement of facts already contained in the ALJ's findings. However, the list included a statement that the ALJ and the circuit court had "found" that the December 2015 email exchange was "a form of discipline."

¶ 34 The board concluded that defendant could "depart from progressive discipline" in the instant case. In support, the board observed that plaintiff's behavior had "created a toxic environment for her co-workers." This observation was contrary to the ALJ's prior finding, adopted in the board's prior order, that it was "impossible to know who was responsible" for the decline in the relationship. The board [6] granted defendant's request for a 15-day suspension, rather than the written reprimand or less specified in the circuit court's order.

¶ 35                              V. 2019 Circuit Court Order

¶ 36 On appeal from the board's 2018 order, the circuit court reiterated that it had reversed "solely as to the imposition of a 29-day suspension." The court observed that it did not give the board leave to conduct a *de novo* proceeding or make new factual findings. The circuit court ruled, "As the Board did not comply with this court's instructions on remand, reversal is warranted."

¶ 37 The circuit court then observed that, even if it considered the board's new findings, reversal was still warranted. The board had argued that the totality of the circumstances and plaintiff's purported creation of a toxic environment raised the level of progressive discipline to a suspension. The court rejected this argument, stating: "The ALJ did not find that [plaintiff] had created a toxic environment." As for other circumstances, the board "cannot use unproven charges to increase the discipline for the one proven charge."

¶ 38 As a result, the circuit court reversed the board's July 11, 2018, order, including the ordered suspension. On July 9, 2019, defendant filed a notice of appeal, listing only the circuit court's June 26, 2019, order as the order it sought to appeal. This timely appeal followed, in which defendant asks this court to affirm plaintiff's 15-day suspension. Defendant is not seeking reinstatement of either the former 29-day suspension or plaintiff's termination.

¶ 39                                    ANALYSIS
¶ 40                              I. Administrative Review
¶ 41 Under the Administrative Review Law, the scope of a court's review extends to all questions of law and fact presented by the record before that court. 735 ILCS 5/3-110 (West 2018); *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14. Since both the circuit court and the appellate court review the decision of the administrative agency, both courts are reviewing courts. See 735 ILCS

---

[6]The board's July 11, 2018, order stated that it was supported by a majority of the board and was signed by three members. The board's prior October 26, 2016, order was signed by five members.

- 7 -

5/3-111(a)(5) (West 2018) (the circuit court has the power "to affirm or reverse the [agency's] decision, in whole or in part"); 735 ILCS 5/3-112 (West 2018) (a decision of the circuit court is appealable as in other civil cases).

¶ 42    In addition to a simple affirmance or reversal, the Administrative Review Law permits a circuit court to remand the matter back to the administrative agency with "questions requiring further hearing or proceedings" (735 ILCS 5/3-111(a)(6) (West 2018)) or "for the purpose of taking additional evidence" (735 ILCS 5/3-111(a)(7) (West 2018)). A circuit court may also "give such other instructions" as it considers "proper." 735 ILCS 5/3-111(a)(6) (West 2018).

¶ 43    If the circuit court remands for a *de novo* hearing on a particular topic or question, a party may petition for leave to appeal that order to the appellate court. Ill. S. Ct. R. 306(a)(6) (eff. Nov. 1, 2017).[7] Rule 306 specifically provides that a party may petition for leave to appeal to the appellate court "from an order of the circuit court which remands the proceeding for a hearing *de novo* before an administrative agency." Ill. S. Ct. R. 306(a)(6) (eff. Nov. 1, 2017).[8] When the circuit court's decision becomes final, a party may appeal the circuit court's order to an appellate court as it would in any other civil case. 735 ILCS 5/3-112 (West 2018).

¶ 44    On administrative review, an appellate court's role is generally to review the decision of the administrative agency, rather than the determination of the lower court. See *Board of Education*, 2015 IL 118043, ¶ 14.

¶ 45    The standard of review, which dictates the amount of deference that a reviewing court owes to an agency's decision, varies depending on whether the issue is a question of law, a question of fact, or a mixed question of law and fact. *Board of Education*, 2015 IL 118043, ¶ 14.

¶ 46    "An agency's conclusion on a question of law is reviewed *de novo*." *Board of Education*, 2015 IL 118043, ¶ 15. *De novo* consideration means that a reviewing court performs the same analysis that the initial tribunal would perform. *People v. Flunder*, 2019 IL App (1st) 171635, ¶ 22. Although an agency's interpretation of a statute that it enforces is "relevant where there is a reasonable debate" about the statute's meaning, a reviewing court is not bound by an agency's interpretation of precedent or statute. *Board of Education*, 2015 IL 118043, ¶ 15.

¶ 47    In contrast to questions of law, the standard of review with respect to strictly factual issues is "whether the findings of fact are against the manifest weight of the evidence." *Board of Education*, 2015 IL 118043, ¶ 15. "The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2018).

¶ 48    "A mixed question of law and fact asks the legal effect of a given set of facts." *Board of Education*, 2015 IL 118043, ¶ 16. In other words, a reviewing court must determine "whether established facts satisfy applicable legal rules." *Board of Education*, 2015 IL 118043, ¶ 16. To mixed questions of law and fact, a reviewing court applies the clear-error standard of review, which means that it will reverse if it is "left with the definite and firm conviction that a mistake

---

[7]Since the circuit's first order was dated January 10, 2018, we cite the supreme court rule in effect at that time. However, the applicable section is still the same.

[8]In an administrative proceeding, as in any other civil proceeding, a party may also seek to appeal an interlocutory order of the circuit court pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

has been committed." *Board of Education*, 2015 IL 118043, ¶ 16.

¶ 49                                          II. Law of the Case

¶ 50    First, we must determine what is already the law of the case, which is a legal question that we review *de novo*. *In re Christopher K.*, 217 Ill. 2d 348, 363-64 (2005). "The law-of-the-case doctrine prohibits the reconsideration of issues that have been decided by a reviewing court in a prior appeal." *Christopher K.*, 217 Ill. 2d at 363. If there have been no material changes in the facts, such issues may not be relitigated or "re-examined." *Christopher K.*, 217 Ill. 2d at 365. The underlying purpose of the doctrine is to avoid indefinite relitigation of the same issues, to obtain consistent results in the same litigation, and to ensure that lower tribunals follow the decisions of higher ones. *Christopher K.*, 217 Ill. 2d at 365. The doctrine expresses the practice of courts "to decline to reopen what has been decided." *Christopher K.*, 217 Ill. 2d at 365.

¶ 51    In the instant appeal, neither party seeks to reopen what was already decided by the circuit court in its January 10, 2018, order. In fact, both parties in their briefs spill much ink on the question of whether the board's July 11, 2018, order was, or was not, within the scope of the circuit court's prior January 10, 2018, order.[9] Neither party sought to appeal the circuit court's January 10, 2018, order, either at the time it was issued or now. Defendant did not list the January 10, 2018, order in its notice of appeal as an order that it sought to challenge and does not argue on appeal that this order was erroneously decided.[10] In fact, defendant asks us to enforce the circuit court's 2018 prior order, as it understands the order, that any discipline less than a 29-day suspension is permitted. Defendant argues on appeal that what the circuit court is not allowed to do is to rewrite its prior order. Thus, we accept the proposition, as the parties clearly do, that the January 10, 2018, order is part of the law of the case. We review the issue, then, as they have framed it for us.

¶ 52    Since we review the agency decision, rather than the lower court's decision, we review the board's July 11, 2018, order, rather than the circuit court's June 26, 2019, order. See *Board of Education*, 2015 IL 118043, ¶ 14. Thus, the circuit court's decision in its 2019 order that the board had failed to follow its prior order is not binding on us.

¶ 53                                   III. Scope of Circuit Court's Remand

¶ 54    The next issue before us, then, is the scope of the circuit court's 2018 remand, which is a legal question that we review *de novo*. *Board of Education*, 2015 IL 118043, ¶ 14. Both parties agree[11] that, "[i]f a cause is remanded, *** the Board[ ] can take only such action which conforms to the judgment of the court of review." *Jones v. Board of Fire & Police*

---

[9]Defendant's brief to this court concludes by arguing that the board's 2018 order "fully complied with the Circuit Court's mandate in the 2018 order," and that it is the "Circuit Court's 2019 order [which] constitutes reversible error."

[10]Defendant's appellate brief states that the circuit court's 2018 order "is not the subject of this appeal." Defendant's brief stresses that it is only the court's 2019 order "that is the subject of this appeal."

[11]Defendant's appellate reply brief acknowledges that plaintiff "cites the well-established legal precept that on remand an administrative agency 'can take only such action which conforms to the judgment of the court of review.' All of which is true."

*Commissioners*, 204 Ill. App. 3d 1004, 1010 (1990). Plaintiff argues that the board exceeded the scope of the circuit court's remand, and defendant argues that it did not.

¶ 55 Defendant's brief speaks of "a one sentence remand." However, this assertion ignores the fact that the circuit court's 2018 order was five pages long and single spaced.

¶ 56 Defendant stresses the one line in the 2018 order, which stated: "This case is remanded to the Board for the imposition of lesser discipline as to the January 19, 2016 incident consistent with Policy 8.042(d)."

¶ 57 However, the 2018 order also stated that "the January 19, 2016 forwarding of the draft document was, at most, a second offense. Under Policy 8.042(d), a second offense warrants a written reprimand, not a suspension."

¶ 58 Thus, the board's action on remand, in imposing yet another suspension, exceeded the scope of the circuit court's 2018 remand. However, the circuit court's 2019 order, which left plaintiff with no discipline at all, contradicted both its own prior order and all the prior findings of the board and the ALJ.

¶ 59 CONCLUSION

¶ 60 For the foregoing reasons, we reverse the board's 2018 order and the 29-day suspension and remand to the board for imposition of discipline consistent with the circuit court's 2018 order.

¶ 61 Reversed and remanded with directions.