2024 IL App (1st) 221618-U
No. 1-22-1618

FIRST DIVISION
September 30, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JAMES FISHER, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2022 M6 1787 |
| | ) | |
| VILLAGE OF LANSING | ) | |
| | ) | |
| Defendant-Appellee. | ) | The Honorable |
| | ) | Carrie E. Hamilton, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

*Held*: In this administrative review action, we affirm the decision of the circuit court dismissing plaintiff's complaint for administrative review.

¶ 1 After a hearing officer of the Village of Lansing (Village) found plaintiff James Fisher liable for three building code violations, plaintiff filed a complaint for administrative review in the circuit court. Plaintiff appeals from the circuit court's dismissal of his complaint for

administrative review, as well as the denial of his corresponding motion to reconsider. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3        This appeal arises out of alleged building code violations at the residence located at 2929 190th Street in Lansing, Illinois, which is owned by plaintiff.

¶ 4        The record reflects that the Village conducted multiple inspections at the property, the last of which occurred in January 2021. At that time, the Village identified multiple issues at the property, including with respect to smoke and carbon monoxide detectors and inadequate railings. According to the Village, plaintiff was told that he needed to schedule a re-inspection of the property to demonstrate that these issues were corrected, and that the Village would not issue a certificate of occupancy until he did so.

¶ 5        In November 2021, the Village issued to plaintiff a notice directing him to appear for an administrative hearing. That notice alleged three violations of the 2015 International Residential Code (Code), whose provisions have been adopted by the Village as the governing building code.[1]  Specifically, the Village alleged one violation for failing to obtain an inspection pursuant to R109.1.2 of the Code, which requires "rough inspection of plumbing, mechanical, gas and electrical systems *** prior to covering or concealment, before fixtures or appliance are set or installed."  See  https://codes.iccsafe.org/content/IRC2015P3/chapter-1-scope-and-administration (last visited Sep. 25, 2024). The Village alleged that plaintiff had failed to schedule a "Re-Inspection of failed electrical inspection."

---

[1] Section 46-716 of the Lansing Village Code of Ordinances states: "The village adopts the International Residential [Code], 2015 Edition *** published by the Internal Code Council, for the control of building and structures as provided herein." See https://library.municode.com/il/lansing/codes/code_of_ordinances?nodeId=PTIILAUSFIBURERE_CH46BUBURE_ARTIIBUCO (last visited Sep. 25, 2024).

¶ 6     Secondly, the Village alleged a violation of R109.1.5 of the Code, under which "the building official shall have the authority to make or require any other inspections to ascertain compliance with this code and other laws enforced by the building official." See *id*. The Village alleged plaintiff's "Failure to Schedule Re-Inspection of Failed Building Inspection."

¶ 7     As a third violation, the Village alleged that plaintiff had failed to obtain a certificate of occupancy for the property, required under R110.1 of the Code. That provision states: "A building or structure shall not be used or occupied *** until the building official has issued a certificate of occupancy therefor as provided herein." See *id*.

¶ 8                         February 3, 2022 Administrative Hearing

¶ 9     Plaintiff's brief suggests that he appeared before an administrative hearing officer on November 16, 2021 and on December 2, 2021, but there is no transcript of any such proceedings. In any event, it is clear that this administrative review action pertains to the findings of the hearing conducted on February 3, 2022, a transcript of which is in the record on appeal. Notably, plaintiff was not present at that hearing, but he was represented by an attorney, Mario Reed.[2]

¶ 10    On behalf of the Village, building commissioner Zoran Savic explained that the two violations for failure to have re-inspections were based on issues that were found in the January 2021 inspection. He indicated that there was need for a new electrical inspection because the smoke and carbon monoxide detectors "needed to be hard wired." There was also need for an inspection due to an "unsafe railing."

¶ 11    Savic also testified that plaintiff had moved into the property, despite him telling plaintiff repeatedly that no one could live there "without inspections passed and an occupancy permit issued." Savic thus explained that (1) one of the violations was for failing to obtain an electrical

---

[2] Plaintiff asserts that he did not attend because he had Covid-19 at the time of the hearing. The transcript does not reflect that this was brought to the attention of the hearing officer.

inspection pertaining to the alarms, (2) the second was for failure to obtain a building inspection to address "the railings"; and (3) the third violation was for failure to obtain a certificate of occupancy before moving in.

¶ 12        Plaintiff's attorney, Reed, stated that plaintiff's position was that he was "not liable" as to each of the three violations, and that plaintiff had "rectified all items" from the last inspection.

¶ 13        When the hearing officer asked Reed if plaintiff had obtained a certificate of occupancy for the property, Reed acknowledged that plaintiff had not. Reed said this was "because the municipality has failed to provide it consistent with their own Certification of Occupancy inspection report."[3] Reed said that plaintiff had "complied with all aspects of the Certificate Occupancy inspection that he was initially tendered" but the Village failed to issue a certificate of occupancy.

¶ 14        Savic disagreed. He told the hearing officer that the last inspection was January 11, 2021, at which time it was found that a railing was missing inside the garage, and there was "patching that needed to be done by the staircase." At the same time, it was found that "all smoke and carbon monoxide detectors must be interlinked." Savic said that "under IRC R314/315 *** 120 volts interconnected smoke and carbon monoxide detectors are required."

¶ 15        Reed maintained that plaintiff had complied with the Village's requests and directed the hearing officer to a January 9, 2022 email from Savic to Reed, copying plaintiff.[4] In it, Savic says "there are only a few simple items left that your client, [plaintiff] claims have already been resolved. *** I am happy to hear he has made all the necessary repairs ***. We can now proceed with the final inspection, which can be very simply set up by calling our Building Department

---

[3] It is not apparent which document plaintiff's counsel was referring to. The transcript does not reflect whether this document was presented to the hearing officer.

[4] The record does not include a copy of this email, although its contents were read aloud during the administrative hearing.

*** and schedule a date and time that your client would be home." Elsewhere in the email, Savic indicated that once the property passed inspection, plaintiff would "receive an occupancy that will permit him to occupy the property legally."

¶ 16    Reed stated that at a prior hearing before a different hearing officer, the officer directed the Village to provide a report that indicated "which items had passed" so that plaintiff could "remedy any outstanding items." Reed said the Village had not provided this and asked for an "accounting" so that he could "work with [plaintiff] to remedy anything which is outstanding." Reed said he did not believe there were actually any "outstanding" items but "want[ed] to know where the Village stands."

¶ 17    Savic acknowledged that there were prior inspections and that other issues had been corrected, but that the January 11, 2021 inspection identified outstanding issues with respect to electrical work and the railing. Savic told the hearing officer that he had asked "that we simply perform the inspections in order to confirm" that plaintiff had complied with those issues. Savic remarked "[w]e couldn't go by Mr. Fisher's or Mr. Reed's word ***. We would have to go out and inspect that, and this is all I was asking."

¶ 18    The hearing officer asked Reed if plaintiff was living at the property, and Reed acknowledged that he was. Reed also agreed that the Village had not issued a certificate of occupancy. Given those admissions, the hearing officer made a finding of liability regarding the violation for failure to obtain an occupancy permit.

¶ 19    The hearing officer turned to the violations pertaining to failure to reschedule an electrical inspection and a building inspection. The hearing officer reviewed the inspection record dated January 11, 2021, which stated that "all smoke and carbon monoxide detectors must be interlinked with 120 volts as well as a heat detector in the garage."

¶ 20        Plaintiff's counsel denied that there was any violation of the Code, because the smoke alarms at the property were "connected wirelessly" such that all would be activated if any one of them was triggered.  According to counsel, plaintiff had installed "2.4 gigahertz technology" which was "essentially like an intercom or a wireless system."

¶ 21        In response, Savic said that the wireless technology described was not sufficient to comply with the Code. He said that "once walls have been opened, then it must be hard wired". He said that the alarms must be linked "with 120 volts, not wirelessly in any shape or form." Savic indicated that walls in the basement at the property had been opened up, so the alarms needed to be "wired and interlinked."

¶ 22        Reed acknowledged that if walls had been opened, then the applicable Code provision would require the alarms to be hardwired. However, he maintained that plaintiff "has not exposed walls, so it does not qualify." Reed "request[ed] proof" of the Village's allegation that walls had been removed. Savic then testified that he and other inspectors at the property had personally observed open walls. The hearing officer briefly questioned inspector Dolores Riviera, who testified she had inspected the property. She agreed that she had observed the removal of interior walls.

¶ 23        Based upon the testimony of Savic and Riviera, the hearing officer found a violation of failure to "hard wire the smoke and CO detector[s]" and imposed a $250 fine.

¶ 24        The officer then turned to the alleged violation for failing to obtain re-inspection of the building. Savic testified this violation was based on the finding at the January 2021 inspection that railings were missing in the garage and that "patching *** needed to be done by the staircase."

¶ 25    Plaintiff's counsel, Reed, acknowledged that the last building inspection was January 2021. The hearing officer asked whether plaintiff had scheduled a re-inspection since that time. Reed answered plaintiff had not done so because the Village had not provided information ordered by a different hearing officer. Reed indicated that one month earlier, a different hearing officer directed the Village to provide "an updated accounting" as to "what items have passed and what items have failed." Savic disputed this assertion.

¶ 26    Based on Savic's testimony that plaintiff never requested re-inspection after the January 11, 2021 inspection, as well as Reed's admission that plaintiff had not done so, the hearing officer found plaintiff liable on the third violation. The hearing officer imposed another fine of $250 for that violation.

Following the February 2, 2022 hearing, the hearing officer issued a corresponding written decision finding plaintiff liable for the three violations and fining him a total of $1000. Specifically, it found (1) plaintiff owed $500 for occupying the property without a certificate of occupancy; (2) plaintiff owed $250 for failing to schedule "re-inspection of failed electric inspection"; and (3) plaintiff owed another $250 for failing to schedule "re-inspection of failed building inspection." The decision noted plaintiff's right to appeal within 35 days pursuant to the Administrative Review Law.

¶ 27                              Circuit Court Proceedings

¶ 28    On March 4, 2022, plaintiff filed a *pro se* complaint for administrative review of the February 3, 2022 decision. In response, the Village filed a record of proceedings in the circuit court which included the November 2021 violation notice, copies of the Code provisions underlying each of the three alleged violations, the transcript of the February 3, 2022 hearing, and photographs of the property. See 735 ILCS 5/3-108(b) (West 2022) (requiring an

administrative agency to answer a complaint for administrative review by filing "the original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by it and the findings and decision made by it.").

¶ 29     The circuit court held a hearing on June 27, 2022, at which plaintiff appeared *pro se* and the Village appeared through counsel. There is no transcript of that hearing, but the record includes a bystander's report of proceedings. During the hearing, plaintiff "sought to introduce evidence beyond the record" into court, after which the trial court explained that "the scope of review was limited to questions of law and fact presented by the entire record" and that it would not consider new evidence. The trial court proceeded to find that the hearing officer's decision was not against the manifest weight of the evidence.

¶ 30     According to the bystanders' report, plaintiff also argued that his due process rights were violated because "the testimony of the Village Building Official [Savic] was fabricated" and that the case against him was "unsupported by the code, ordinances and violations cited and specious evidence presented during the administrative hearing." Plaintiff claimed that photographs presented at the administrative hearing were "taken long before he owned the property," and he "stated that no walls were opened for any reason."

¶ 31     The circuit court told plaintiff that his counsel had the opportunity to cross-examine witnesses and call witnesses at the hearing, noting that plaintiff had not provided testimony at the hearing. Plaintiff responded that he was not at the hearing because he had Covid-19. He also stated that he "did not have time to properly vet proper representation and had no intention of allowing anyone to represent him in his absence."

¶ 32        The bystander's report reflects that plaintiff also "attempted to introduce sections of the Village of Lansing's Code of Ordinances that were not presented during the Administrative Hearing." The circuit court stated that its review was "limited to the Code in the record."

¶ 33        The bystander's report reflects that the circuit court "read directly from the transcript [from the administrative hearing] and asked the Plaintiff to explain his objections to each section." Plaintiff "expressed that he disagreed with the manner in which his attorney presented his case at the Administrative Hearing." The circuit court explained that "her authority only allowed her to determine if the Hearing Officer's Decision was against the manifest weight of the evidence presented."

¶ 34        According to the bystander's report, plaintiff claimed that certain parts of Savic's testimony was fabricated, accusing Savic of "making up ordinances and violations that do not exist." For example, he claimed Savic had made up the testimony that the Code required wired, interconnected alarms if the property had been rehabbed. "Plaintiff stated that he should have been allowed to use Bluetooth" and that the Code did not actually require "interconnection of smoke detectors and carbon monoxide detectors." The bystander's report relates that "[t]he court pointed plaintiff back to the transcript where the applicable code sections were quoted by the hearing officer."

¶ 35        The bystander's report also reflects that plaintiff "took issue" with various alleged code violations, including missing railings. Plaintiff "held up a packet of evidence he stated would address certain of these issues." He argued that "Savic admitted to adding items during each subsequent inspection" which "support[ed] his claim that Savic was violating his due process rights."

¶ 36    After the circuit court "again explained that these factual arguments could not be considered on review" because they were not raised at the underlying hearing, it dismissed the complaint for administrative review and upheld the decision of the hearing officer.

¶ 37    On June 27, 2022, the circuit court entered an order affirming the findings and decision of the hearing officer.

¶ 38                    Motion to Reconsider

¶ 39    On July 27, 2022, Plaintiff filed a motion to reconsider. In the motion to reconsider, plaintiff cited a number of Code provisions not referenced at the hearing, and he attached documents reflecting the results of an inspection in July 2020. He argued that those provisions and exhibits demonstrated that he was in compliance with the Code, including with respect to smoke alarms and carbon monoxide detectors, which he claimed had been updated in 2020. Thus, he urged that "no additional inspection is required." Plaintiff also claimed that under the Code, no additional work was necessary and so "there exists no legal reason to withhold the certificate of occupancy." He claimed that the denial of the certificate of occupancy was a "denial of due process rights."

¶ 40    The motion to reconsider was argued at a hearing on October 11, 2022. The bystanders' report from that hearing indicates that plaintiff "argued that the Court was attempting to make up its own laws and that his right to due process was violated." The Village objected to "new exhibits presented" by plaintiff in support of the motion to reconsider. The court sustained the objection and "noted that none of the of the additional documents presented by plaintiff were newly discovered" for purposes of a motion to reconsider. The court "stated that to the extent plaintiff was arguing misapplication of the law **** the Court reiterated the applicable law and standards and that the Court correctly applied that law." Plaintiff argued that "the ordinances at

issue were unconstitutional," but the court noted that "the constitutionality of the Village's Code of Ordinances was not properly before the Court based on plaintiff's complaint for administrative review or in the motion to reconsider." The court thus denied the motion to reconsider on October 11, 2022.

¶ 41 The record reflects that plaintiff subsequently filed a report of proceedings to be certified for use in this appeal, after which the Village objected and filed its own report of proceedings. Following a hearing on the matter, the circuit court finalized and approved a single bystander's report of proceedings for both the June 27, 2022 hearing and the October 11, 2022 hearing on the motion to reconsider.

¶ 42 Plaintiff submitted a *pro se* brief using a form approved by the Illinois Supreme Court. The Village has submitted a response. Plaintiff moved for an extension of time to file a reply brief. Pursuant to that extension, his reply brief was due December 18, 2023. Plaintiff did not file a reply brief.

¶ 43                                              ANALYSIS

¶ 44 On appeal, plaintiff suggests that the bystander's report is erroneous in various respects. He also argues that (1) the circuit court erred in applying the "manifest weight of the evidence" standard of review to the administrative decision; (2) the trial court erred in failing to find his due process rights were violated by the Village's decision to "refus[e] to issue a government regulated permit"; and (3) the trial court erred "by allowing the [Village] to submit a late, incomplete hearing transcript for February 3, 2022 omitting the transcripts, additional filings and exhibits for November 16, 2021 and December 2, 2021." He requests that we direct the Village "to submit complete administrative hearing transcripts complete with any filed documents or

vacate its order and return any fines and fees." For the following reasons, we find plaintiff's appeal lacks merit.

¶ 45                    Procedural Issues Regarding the Brief and Record

¶ 46        At the outset, we address certain procedural issues with plaintiff's *pro se* brief. As the Village notes, plaintiff's brief does not fully comply with Supreme Court Rule 341 in certain respects and is difficult to follow at certain points. Although plaintiff includes some record citations, his brief makes numerous factual assertions that are not supported by citations to the record. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (A statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal."); Ill. S. Ct. R. 341(h)(7) (argument within a brief "shall contain the contentions of the appellant and the reasons therefore, with citation of the authorities and the pages of record relied on.")

¶ 47        Similarly, plaintiff's brief purports to "correct misstatements" and "errors in the bystanders' report." However, the bystander's report reflects that it was approved and certified by the trial court following a hearing, such that it forms part of the record on appeal. Ill. S. Ct. R. 323(c) (eff. July 1, 2017) ("The court, holding hearings if necessary, shall promptly settle, certify and order filed an accurate report of proceedings. Absent stipulation, only the report of proceedings shall be included in the record on appeal.")

¶ 48        The Village correctly notes that this court is empowered with discretion to strike an appellant's brief for failure to follow procedural rules. See *Freedman v. Muller*, 2015 IL App (1st) 141410, ¶ 22. However, we decline the Village's invitation to take the drastic step of striking plaintiff's brief in its entirety. Rather, we address the arguments that we can glean from

the brief. See *id*. (declining to strike the brief where its procedural deficiencies "do not hinder our ability to review the issues at hand.").

¶ 49    In so doing, however, we will not consider plaintiff's factual assertions that are not supported by the record. This is because "[a] court of review must decide the issues before it solely on the basis of the record made in the trial court." *People v. Reimolds*, 92 Ill. 2d 101, 106-07; see also *Freedman*, 2015 IL App (1st) 141410, ¶ 21 ("We will not consider any documents that were not presented to the circuit court or any references to those documents on appeal."). Insofar as plaintiff claims the bystander's report is erroneous, there is no support in the record for his assertions. Thus, we will rely on the certified bystander's report as an accurate reflection of the circuit court proceedings.

¶ 50                    Governing Law on Administrative Review

¶ 51    Before we turn to the merits of plaintiff's claims, we review governing principles in this administrative appeal. "On administrative review, an appellate court's role is generally to review the decision of the administrative agency, rather than the determination of the lower court. *Antlitz v. Forest Preserve District of Cook County*, 2020 IL App (1st) 191415, ¶ 44. Under the Administrative Review Law, the scope of a court's review extends to all questions of law and fact presented by the record before that court. *Id.* ¶ 41 (citing 735 ILCS 5/3-110 (West 2018).

¶ 52    "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends on whether the issue presented is a question of law, fact, or a mixed question of law and fact." *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14. An agency's conclusion on a question of law is reviewed *de novo*. *Id.* ¶ 15. "In contrast, '[T]he findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct.' " *Id.*

(quoting 735 ILCS 5/3-110 (West 2010)). In reviewing an agency's factual findings, "the court will not reweigh the evidence, or substitute its judgment for that of the agency. Rather, the court simply determines whether the findings of fact are against the manifest weight of the evidence." *Id.* "An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. [Citations.]" *Cinkus v. Village of Stickney Municipal Officers Electoral Bd.*, 228 Ill. 2d 200, 209 (2008).

¶ 53        "A mixed question of law and fact asks the legal effect of a given set of facts. In resolving a mixed question of law and fact, a reviewing court must determine whether established facts satisfy applicable legal rules." *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 16. "An agency's conclusion on a mixed question of law and fact is reviewed for clear error." *Id.*

¶ 54        We also keep in mind that "[a]s a general rule, issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review." *Williams v. Department of Human Services Division of Rehabilitation Services*, 2019 IL App (1st) 181517, ¶ 19 (quoting *Carpetland U.S.A. Inc, v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002)). "[R]aising an issue for the first time in the circuit court on administrative review is insufficient. The rule of procedural default specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts." *Cinkus v. Village of Stickney Municipal Officers Electoral Bd.*, 228 Ill. 2d 200, 213 (2008).

¶ 55                    The Circuit Court Applied the Correct Standard of Review

¶ 56        With these principles in mind, we turn to plaintiff's contention that the trial court "misapplied the proper standard of review" in reviewing the administrative decision. Plaintiff

suggests that the circuit court erred in applying manifest weight of the evidence review. He suggests that he raised purely legal questions pertaining to interpretation of Code provisions, requiring *de novo* review. For example, he disputes that he was required to have "interlinked" smoke and carbon monoxide detectors. He points out that at the hearing, his attorney disputed whether an exception applied based on whether walls had been removed. Plaintiff also states that, in argument before the circuit court, he "held up" various Code provisions "to explain that there are certain exceptions in the code that cancel out [the Village's] argument." He also states that he tried to express to the circuit court that his attorney at the hearing "did not go far enough" in arguing that the "2.4 GHZz Wi-Fi technology was permissible" under the Code. He suggests that additional Code provisions would have shown that he was in compliance and that no further inspection was necessary.

¶ 57    Plaintiff's claim that the circuit court used the wrong standard of review is without merit. First, we observe that plaintiff tried to make new legal arguments before the circuit court, which was improper. That is, the circuit court could not consider new arguments about Code provisions that were not brought to the hearing officer's attention. See *Cinkus*, 228 Ill. 2d at 212-13 ("The rule of procedural default *** preclude[s] judicial review of issues that were not raised in the administrative proceedings.").

¶ 58    Rather, the circuit court correctly recognized that its role was to review the administrative decision. Here, the agency assessed the factual evidence before it (including Savic's testimony) and determined that plaintiff had, in fact, committed the three charged Code violations. Thus, the proper standard was manifest weight of the evidence.

¶ 59    We recognize that there was ample discussion at the administrative hearing about whether the Code required the property to have physically interconnected smoke and carbon

monoxide alarms, or whether the wireless technology that plaintiff allegedly implemented was sufficient. But this determination necessarily involved factual findings as to whether the property fell with an exception under R 314.4 of the Code, under which interconnection of smoke alarms "shall not be required where alterations or repairs do not result in removal of interior walls or ceiling finishes exposing the structure."[5] The transcript of the administrative hearing shows that, in deciding that this exception did not apply, the hearing officer relied on testimony of Savic and another building inspector, Riviera, that they observed walls had been removed at the property. In short, the hearing officer weighed factual evidence in deciding whether the Village had proven the three violations. On administrative review, the circuit court correctly recognized that applicable standard of review was whether the hearing officer's findings were against the manifest weight of the evidence. See *Williams*, 2019 IL App (1st) 181517, ¶ 21 ("The agency's factual findings are '*prima facie* true and correct' (735 ILCS 5/3-110 (West 2016) and will not be disturbed on appeal unless they are against the manifest weight of the evidence. [citation].)

¶ 60     We briefly note that plaintiff does not explicitly argue that the hearing officer's findings on the violations were against the manifest weight of the evidence. Even assuming that he raised that argument, we could not find that the hearing officer's factual findings were against the manifest weight of the evidence under the record that was presented to the hearing officer. The transcript of the hearing reflects that the hearing officer relied on Savic and Riviera's testimony regarding their observations of the property. Moreover, plaintiff's attorney did not dispute that (1) plaintiff had not scheduled any re-inspection since the January 2011 inspection and (2) that plaintiff lived there despite not obtaining a certificate of occupancy.

¶ 61                    Plaintiff's Due Process Claim Lacks Merit

---

[5] See https://codes.iccsafe.org/content/IRC2015/chapter-3-building-planning#IRC2015_Pt03_Ch03_SecR314 (last visited Sep. 25, 2024).

¶ 62 We turn to plaintiff's contention that the trial court erred in rejecting his claims that his due process rights were violated by the hearing officer's decision. In making this argument, he suggests that under a Code provision that was not discussed at the hearing, he was exempt from being required to obtain a certificate of occupancy. That is, he asserts that his property fell within the scope of the "Work exempt from permit" provision in R105.2 of the Code.[6] He claims that "no additional work requiring a permit was necessary" and there was "no legal reason to withhold the certificate of occupancy." In turn, he suggests the denial of a certificate of occupancy was a violation of his due process rights.

¶ 63 The record indicates that this argument was not raised before the administrative hearing officer. Indeed, the record indicates that plaintiff did not bring R105.2 to the circuit court's attention until his motion to reconsider following the circuit court's dismissal of his complaint for administrative review. As this defense was not raised in administrative proceedings, it could not be "considered for the first time on administrative review." *Williams*, 2019 IL App (1st) 181517, ¶ 19; see also *Cinkus*, 228 Ill. 2d at 214 (constitutional challenge to validity of a statute cannot be raised for the first time on administrative review). Moreover, it was also improper to raise a new legal defense for the first time in a motion to reconsider. See *Liceaga v. Baez,* 2019 IL App (1st) 181170, ¶ 28 ("A reconsideration motion is not the place for the inclusion of new arguments that could have been raised earlier.") Thus, this claim was not properly before the circuit court.

¶ 64 In any event, plaintiff does not point to anything at the hearing that could amount to a violation of due process rights. "Due process requires a fair trial before a fair tribunal and applies

---

[6] R105.2 of the Code states that "Permits shall not be required for the following" before listing several types of work, including "One-story detached accessory structures:, fences not over 7 feet; retaining walls not over 4 feet, "Sidewalks and driveways," and "Paint, papering, tiling, carpeting, cabinets, counter tops and similar finish work." See https://codes.iccsafe.org/content/IRC2015P3/chapter-1-scope-and-administration (last visited Sep. 24, 2024).

to both courts and administrative agencies performing adjudicatory functions." *Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 426 (2005). A party is entitled to a "fair and impartial hearing" and due process "also requires that all parties have an opportunity to cross-examine witnesses and offer rebuttal evidence." *Id.* (citing *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 41 (2000)). Here, the record shows that plaintiff was notified of and was represented by counsel at the hearing. His counsel had the opportunity to cross-examine the Village's witnesses. Moreover, while plaintiff states that he did not appear to testify at the hearing because he had Covid-19, there is nothing in the record to indicate that he sought any postponement of the hearing to allow him to testify. In short, the record does not support any due process violation.

¶ 65                    <u>Whether the Trial Court Erred in Failing to Consider Additional Materials</u>

¶ 66         The final portion of plaintiff's brief contends that the trial court erred by allowing the Village "to submit a late, incomplete hearing transcript" of the February 22, 2022 administrative hearing while "omitting the transcripts, additional filings and exhibits for November 16, 2021 and December 2, 2021." Plaintiff suggests the trial court should have considered additional documents that were not included in the record from the administrative hearing, which reflect the results of Village inspections of the property in 2020, before the January 2021 inspection that gave rise to the three violations at issue. In this section of the brief, plaintiff also makes numerous factual assertions about his communications with the Village in the months leading up to the January 2021 inspection. Among these, he claims that Savic "made things up" to manufacture Code violations during his visits to the property. Plaintiff claims that when he called and "asked him for the official code he was relying upon," Savic responded by laughing and saying "who do you think you are, a lawyer?" He also claims that inspector Riviera inspected his

property in October 2020 and "said I passed," but that Savic fabricated alleged Code violations. In turn, he urges there was no basis to require re-inspection or to deny plaintiff a certificate of occupancy.

¶ 67     This portion of the brief raises no reason to disturb the Village's administrative decision or the circuit court's dismissal of plaintiff's complaint. To the extent plaintiff seeks to introduce evidence that was not presented at the February 2022 administrative hearing, this is improper. Administrative review "extends to all questions of fact and law the entire record presents, but judicial review is strictly limited to the administrative record. [Citations.] We may not consider new or additional evidence beyond what was originally presented to the [agency]." *Scathell v. Board of Fire and Police Commissioners for Village of Melrose Park*, 2022 IL App (1st) 201361, ¶ 35.

¶ 68     Further, this court has reviewed the transcript of the February 3, 2022 hearing that was filed by the Village as part of the record of proceedings. There is nothing in that transcript to support plaintiff's suggestion that it was "incomplete," or to suggest that the record prepared by the Village omitted materials relied on by the hearing officer in rendering its decision. See 735 ILCS 5/3-108(b) (West 2022) (requiring an administrative agency to file "the original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by it and the findings and decision made by it."). Although plaintiff filed documents in the circuit court reflecting prior inspections in 2020, the February 2022 hearing transcript makes clear that the three violations at issue arose from plaintiff's failure to schedule re-inspection of the property to address the specific issues identified at the January 2021 inspection. The other documents plaintiff now relies on were not considered by the hearing officer in rendering its findings. In short, plaintiff has not identified any way in which the

administrative record was incomplete, and he could not belatedly add new materials on review before the circuit court.

¶ 69                                                    CONCLUSION

¶ 70         For the foregoing reasons, we affirm the circuit court's dismissal of plaintiff's complaint for administrative review and its denial of plaintiff's motion to reconsider.

¶ 71         Affirmed.